UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 6:21-CR-07-CHB-HAI-15 |
| v. | |
| BRIAN KENTON YORK, | RECOMMENDED DISPOSITION |
| Defendant. | |

*** *** *** ***

On referral from District Judge Boom, the Court considers reported violations of supervised release conditions by Defendant Brian Kenton York.

**I.**

District Judge Boom entered Judgment against Defendant in June 2022 after Defendant pleaded guilty to one count of conspiracy to distribute heroin. D.E. 468. Defendant was sentenced to twenty months of imprisonment followed by three years of supervised release. *Id.* at 2-3. This was significantly below the Guidelines Range of 51 to 63 months. Defendant was first released on January 4, 2023.

On August 4, 2024, the United States Probation Office ("USPO") reported via "12A" that Defendant had been arrested on January 28, 2024, for public intoxication (on "his prescribed Methadone and psychiatric medication"). D.E. 532. The USPO requested no formal action by the Court, although Defendant had violated the condition prohibiting commission of a state crime and the condition that required him to report any contact with law enforcement within 72 hours.

At the time of 12A Report, Defendant was enrolled in a diversion program including a community intensive outpatient program through state probation. *Id*. The USPO reported that, since Defendant's release,

> he has been compliant with the terms of his supervision. He attends individual counseling for substance abuse and mental health treatment. In addition to those two programs, York has received great progress reports from the state IOP treatment that he has been attending since March 2024. He is about to enter the maintenance phase of the state program and will successfully complete the program within the next two months.
>
> York has a great support system through his aunt, whom he has resided with since his release.

*Id*.

On April 10, 2025, the USPO issued another report and requested an arrest warrant. According to that report, on April 8, Defendant admitted, in conjunction with a urine drug screen, that he had used methamphetamine and marijuana. Defendant was at the time enrolled in intensive outpatient drug treatment but was terminated the same date "after becoming irate after being requested to submit to a drug test."

Defendant ultimately pleaded guilty to the allegations of drug use and committing the crime of unlawful drug possession. D.E. 559. He was sentenced to three months of imprisonment, followed by one year of supervision. D.E. 561. An additional condition of release, Special Condition #10, required completion of a three-month inpatient substance-abuse treatment program. *Id*. at 5.

Defendant was released again on August 4, 2025, for a term of supervision set to expire August 3, 2026.

## II.

On October 17, 2025, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges a single violation of the special condition that requires completion of a three-month inpatient substance-abuse-treatment program. According to the Report, Hickory Hills Recovery informed Probation that Defendant had left inpatient treatment against staff advice on October 8. His whereabouts were unknown. This is a Grade C violation.

Defendant was arrested on August 2, 2026. The Court conducted an initial appearance under Rule 32.1 on August 5. D.E. 579. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention. Defendant requested a continuance of the detention issue. Defendant was remanded to the custody of the United States Marshal. *Id.*

The Court conducted a final hearing on August 24, 2026. D.E. 583. Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. He competently entered a knowing, voluntary, and intelligent stipulation to the Violation. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis as described in the Report. Defendant said he got angry and left treatment after staff accused him of stealing a bag of chips. The government thus established the Violation under the standard of section 3583(e). The parties then argued for different consequences.

## III.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the § 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to conspiracy to distribute heroin, a Class C felony. *See* 21 U.S.C. § 846. Such a conviction carries a two-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as Grade C violation. Given Defendant's criminal history category of II (the category at the time of the conviction in this District) and Grade C violation, Defendant's range, under the Revocation Table of Chapter Seven, is four to ten months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's drug-trafficking conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

**IV.**

At the final hearing, the government argued for revocation with a top-of-the-Guidelines sentence of ten months of imprisonment, followed by a one-year term of supervised release. The defense requested a bottom-Range penalty of four months of imprisonment with one year of ensuing supervision.

According to the government, there are aggravating factors that would support an above-Range sentence. The underlying conviction involved participation in a trafficking conspiracy

that resulted in at least one overdose death. The government also argued that Defendant has been shown extraordinary leniency in the past. His underlying sentence was less than half of Defendant's Guidelines Range. There was a no-action request after his January 2024 arrest, which Defendant also failed to report to probation. *See* D.E. 532. Defendant's prior revocation sentence of three months was also below his Guidelines Range at the time. *See* D.E. 561. The government acknowledged that this light revocation sentence may have reflected the addition of a mandatory addiction-treatment condition.

The government asserted that Defendant leaving treatment (which was designed to help with his underlying issues) was a flagrant breach of the Court's trust, which was compounded by his disappearing for a year. The prosecutor said he was not asking for an above-Guidelines sentence this time because he also wanted to reimpose the mandatory inpatient-addiction-treatment condition.

The defense stressed that Defendant was accepting responsibility. And the heart of his criminal behavior is his addiction problem. Defendant has no history of violence and no prior felonies. In terms of the underlying conviction, the defense's position was that Defendant was merely allowing another person to sell drugs from Defendant's house. Defendant was a minor participant in the conspiracy, not a major player or a money maker.

The defense also submitted a letter in support from Defendant's aunt. D.E. 582.

Defendant declined to make a statement concerning the proposed penalties.

**V.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

The first penalty factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). The PSR explains that Defendant allowed codefendant Hagan to sell drugs out of his home in exchange for receiving free heroin. PSR ¶¶ 42-43. Here, Defendant has not been caught using or dealing drugs. But the revocation conduct is related in that he absconded from the treatment designed to address this underlying addiction issue.

The Court next considers Defendant's history and characteristics. His history includes the Court's prior leniency with below-Guidelines sentences and a prior 12A. His characteristics include being so angry and offended at treatment that he left and then lost contact with probation for a year. But, as Defendant mentioned, he struggles with depression stemming from his mother's death, as also explored in the PSR.

The Court also considers the need to deter criminal conduct and protect the public. Defendant's issues stem from his drug abuse and mental health issues. Both the revocation sentence and the recommended mandatory treatment will serve to protect the public. But Defendant must have patience and do his best to cooperate with his treatment providers.

Another factor focuses on opportunities for education and treatment. Defendant's need for services has been a theme throughout this case. The Court will make another attempt to provide inpatient drug abuse treatment.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but

secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). The trust breach is discouraging here because of Defendant's prior lenient treatment from the Court. Yet the Court sympathizes with his depression and addiction struggles. Incarceration should be a wake-up call and the ensuing treatment should provide skills for a better life moving forward.

**VI.**

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty the charged violation.

2. Revocation with eight months of imprisonment, followed by one year of supervision, to begin with a three-month period of inpatient treatment for substance abuse in coordination with the probation office (as described in existing Special Condition #10, D.E. 561 at 5).

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Judge. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Boom's docket upon submission. If Defendant chooses to waive allocution, she **SHALL** do so on or before the deadline for filing objections.

This the 26th day of August, 2026.

**Signed By:**
***Hanly A. Ingram***
**United States Magistrate Judge**